UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 08-320-GWU


MELINDA KAY GARLAND,                                            PLAINTIFF,


VS.                                    **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                               DEFENDANT.


## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative

denial of her applications for Disability Insurance Benefits (DIB) and Supplemental

Security Income (SSI).  The appeal is currently before the court on cross-motions

for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation

process in assessing whether a claimant is disabled.

1.   Is the claimant currently engaged in substantial gainful activity?
     If so, the claimant is not disabled and the claim is denied.

2.   If the claimant is not currently engaged in substantial gainful
     activity, does he have any "severe" impairment or combination
     of impairments--i.e., any impairments significantly limiting his
     physical or mental ability to do basic work activities?  If not, a
     finding of non-disability is made and the claim is denied.

3.   The third step requires the Commissioner to determine
     whether the claimant's severe impairment(s) or combination of
     impairments meets or equals in severity an impairment listed

1

08-320  Melinda Kay Garland

in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence.  Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight.  Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician

2

08-320  Melinda Kay Garland

than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

08-320  Melinda Kay Garland

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

4

08-320  Melinda Kay Garland

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having

5

08-320  Melinda Kay Garland

the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

08-320  Melinda Kay Garland

## DISCUSSION

The plaintiff, Melinda Kay Garland, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of discogenic and degenerative disorders of the back, residuals of being status post a right hand injury/repair, and situational depression and anxiety. (Tr. 11). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 14-19). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether the plaintiff, a 38-year-old woman with a high school equivalency diploma and work experience as a process assembly clerk, press operator, and metal sander, could perform any jobs if she were capable of "medium" level exertion and also had the following non-exertional restrictions. (Tr. 51-2). She: (1) could not crouch, crawl, or climb ladders, ropes, and scaffolds; (2) could occasionally climb ramps and stairs; (3) could perform no fine manipulation or feeling with the right hand; and (4) was limited to one- or two-step tasks and had a "limited but satisfactory" ability to deal with coworkers and stress and to maintain attention and concentration. (Tr. 52-3). The VE responded that there were jobs at both the medium and light levels which such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 53-4).

7

08-320  Melinda Kay Garland

On appeal, this court must determine whether the factors set out in the hypothetical question are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff alleged disability beginning February 1, 2006 due to back problems, diabetes, sleep apnea, and a hand injury.  (Tr. 110).

The medical evidence shows that the plaintiff sustained a crush injury with partial amputation of the right index finger, middle finger, and ring finger in May, 1997.  (Tr. 153, 245).  She was eventually given a permanent partial impairment rating of 18 percent (Tr. 320), but returned to work at her former employer in a management position (Tr. 41).  She testified that, although she had limited use of her right hand, she had no restrictions on using her left hand.  (Tr. 40, 44).  In fact, the plaintiff testified that her worst problem was her back, which limited her ability to stand and walk, and caused her to be unable to get out of bed due to pain on some days.  (Tr. 47).  She was not taking pain medications at the time of the hearing, however, because she had become pregnant.  (Tr. 46, 48).  The plaintiff testified that her next worst problem was blood pressure, which was difficult to control.  (Tr. 48-9).  She described problems with depression and anxiety, apparently related to recent deaths in her family.  (Tr. 49).  She had not sought mental health treatment.  (Id.).

Other problems included a diagnosis of diabetes, although no medication had been prescribed (Tr. 42), as well as several evaluations for obstructive sleep

8

08-320  Melinda Kay Garland

apnea, although the plaintiff apparently did not allege any limitations due to this condition (Tr. 328-30, 333, 398).

The medical evidence shows that an MRI of the lumbosacral spine dated August 18, 2006 showed a large L5-S1 disc herniation as well as degenerative disc disease at the L4-5 and L5-S1 levels.  (Tr. 341).  The plaintiff's treating family physician, Dr. Richard Carter, wrote a note in July, 2006, indicating that she was "unable to work at this time due to herniated L5-S1 disc."  (Tr. 335).  Dr. Carter did not give specific restrictions, and his office notes showed that on August 16, 2006, the plaintiff was complaining of "some" increased back pain and pain radiating down the right leg but she had no focal neurological deficits.  One week later, Dr. Carter noted the MRI results showing a herniated disc, but his examination showed that his patient could heel and toe walk and the only abnormality mentioned was "tenderness" in the lumbar spine and paraspinous muscles.  (Tr. 348).  She was referred to a neurosurgeon, and "given warning signs for severe herniation."  (Id.).  This implies that her current herniation was not yet considered severe.

The plaintiff was eventually evaluated by Dr. William Brooks, a neurosurgeon, who found marked degenerative disc disease with facet arthrosis at multilevels for which surgical correction was not recommended.  (Tr. 393).  Dr. Brooks stated that "[f]or that reason, I consider her disabled."  He did not provide any physical examination findings or list specific functional restrictions.  (Id.).

9

Dr. Mark Burns conducted a consultative examination of the plaintiff on September 27, 2006.  At that point, she had not yet seen a neurosurgeon.  (Tr. 376-7).  His examination showed that the plaintiff weighed 268 pounds at a height of 64 inches.  Her blood pressure was elevated, but her back had no evidence of tenderness or spasm, straight leg raising tests were normal, and she was able to perform gait, station, heel, toe, tandem walking, and a knee squat without difficulty.  (Tr. 377-8).  Deep tendon reflexes were present and equal.  Moreover, despite the amputation of the distal interphalangeal joints of the right hand, she was able to flex the area within a normal range.  (Tr. 378).  He found no evidence for any physical restrictions.  (Tr. 378-9).

Although the plaintiff unquestionably has a herniated disc, the mere diagnosis of a condition does not establish disability.  Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988).  Nor was the ALJ required to accept a conclusory opinion of "disability" or inability to work from the treating source or the neurosurgeon, since these opinions represent vocational conclusions outside their area of expertise.  It is also noteworthy that Dr. Brooks provided no physical examination results, and the only findings given by Dr. Carter were of spinal tenderness.  The ALJ could reasonably have accepted the conclusion of Dr. Burns that the plaintiff had no limitations based on his negative physical examination findings, but he did give the plaintiff the benefit of the doubt in restricting her both exertionally and non-

08-320  Melinda Kay Garland

exertionally.   Therefore, this portion of the decision is supported by substantial evidence.

The mental limitations selected by the ALJ are also supported by substantial evidence.  As previously noted, the plaintiff stated that she had not sought mental health treatment.  She underwent a consultative psychological evaluation by Reba Moore, a licensed psychological practitioner, in November, 2006.  According to the account given to this source, the plaintiff actually stopped working to stay with her ill father.  (Tr. 384).  She stated that her nerves were "shot" and she was unable to sleep, but her family doctor would not give her medication.  (Id.).  She described few daily activities, and had little social interaction.  (Tr. 385).  IQ testing showed a full scale score of 90, with achievement testing showing high school level of arithmetic ability and post high school reading ability.  (Tr. 385-6).  Moore administered some testing which she interpreted as showing significant levels of depression and anxiety, and diagnosed a major depressive disorder and a generalized anxiety disorder, with a current Global Assessment of Functioning (GAF) score of 60.  (Tr. 388, 390).  A GAF score of 60 represents no more than moderate difficulty in social, occupational, and school functioning.  Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.  Moore completed a mental medical assessment form indicating that the plaintiff had a "seriously limited but not precluded" ability to make most occupational, performance, and personal/social adjustments.  (Tr. 389, 391).

08-320  Melinda Kay Garland

The ALJ rejected Moore's report because he did not agree that her objective testing supported her conclusions.  (Tr. 13).  Whatever may be said about the evidentiary support for this conclusion, it is clear that the restrictions in the medical assessment form are partially based on the plaintiff's physical complaints (Tr. 389, 391), a matter outside the expertise of a psychologist, and that they appear to be inconsistent with the relatively high GAF score of 60.  A reasonable finder of fact could have discounted Reba Moore's report on these grounds.[1]  Moreover, the plaintiff has raised no specific objections in her brief.

The decision will be affirmed.

This the 31st day of July, 2009.

Signed By:

G. Wix Unthank

United States Senior Judge

---

[1]Nor is there any support in Dr. Carter's office notes for complaints of anxiety or sleep problems (other than her pre-existing problem with sleep apnea).  (Tr. 348-50, 422-425).

12